UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
In re

Willoughby Equities LLC,

                        Debtor.

Chapter 11

Case No. 24-44217-jmm

---------------------------------------------------------------X

## STIPULATION AND MEDIATION ORDER

IT IS HEREBY STIPULATED AND AGREED, by and between Willoughby Equities LLC (the "Debtor") and Twist Realty LLC (the "Secured Creditor"), as follows.  The Debtor and the Secured Creditor is each a "Party" and together they are collectively referred to herein as the "Parties."

W I T N E S S E T H:

WHEREAS, there currently exist disputes between the Parties that are the subject of the above-captioned chapter 11 case of the Debtor; and

WHEREAS the Parties acknowledge that mediation is a collaborative process in which the participants (here, the Parties) work together with the aid of a neutral and impartial person (a mediator) to find a mutually acceptable negotiated resolution of their dispute; and

WHEREAS, the Parties desire to attempt to settle their dispute through non-binding mediation with the assistance of Paul Rubin as the mediator (the "Mediator").

NOW, THEREFORE, the Parties hereby mutually agree as follows:

1. <u>The Court's Rules</u>.  The Parties acknowledge that they are bound to conduct this mediation in accordance with the terms of the Local Rules of the Bankruptcy Court (the "Local Rules"), any order of the Bankruptcy Court approving the terms of this Agreement (a "Mediation Order") and this Agreement.  To the extent of any conflict between this Agreement on one hand, and the Local Rules or a Mediation Order on the other, the terms of the Local Rules or Mediation Order shall govern.

2. <u>Impartiality of the Mediator</u>.  The Parties acknowledge that the Mediator is impartial and cannot act as advocate, representative or counsel for either Party and has no authority to make binding decisions, impose settlements or require concessions by either Party, it being understood and agreed that any agreements which may be reached between the Parties as a result of the mediation process shall be embodied in a separate written agreement between the Parties prepared with the assistance of their respective counsel.  The Mediator has disclosed to the Parties that Rubin LLC, the firm of which he is the member, regularly represents the real estate advisor selected by the Debtor, Northgate Realty Group ("Northgate") regarding issues

related to its retention and compensation, and that in February 2025, before being contacted about serving as mediator, he did advise Northgate with respect to comments to its proposed retention order in this case that Debtor received from the Office of the United States Trustee. The Mediator has advised the Parties that Rubin LLC will no longer advise or represent Northgate with respect to the Debtor's case, but may continue to advise Northgate in matters unrelated to the Debtor's case. The Debtor and the Secured Creditor has each advised the Mediator that it does not object to this arrangement, and that it does not object to the Mediator communicating with Northgate during the course of the mediation on a confidential basis for its professional perspective regarding the Debtor's real property, including its value, condition, potential uses, and marketing efforts and potential transactions.

3. <u>Pre- and Post-Mediation Caucuses and Conferences</u>. The Parties understand and agree that, in connection with the mediation process, the Mediator may meet in confidential caucus sessions separately with each Party. The Mediator may, at the request of either Party or on his own initiative, conduct any conference pursuant to this Agreement by telephone, e-mail, text message or other means of communication, before or after a mediation session.

4. <u>Confidentiality, Immunity and Indemnification</u>. To enable the Parties to discuss all aspects of their dispute freely and to enable the Mediator effectively to assist the Parties in reaching a voluntary resolution of their dispute, the Parties agree as follows:

(i) All statements or other communications made in connection with the mediation conducted pursuant to this Agreement, whether made before, during or after a mediation session, shall be confidential and, unless otherwise independently admissible or discoverable, shall be inadmissible and/or privileged as settlement discussions to the extent provided by applicable law. Any information or document presented in the mediation is to be deemed confidential. The Mediator will treat as confidential and refrain from disclosing any information conveyed to the Mediator during any private caucus unless the Party conveying such information authorizes the Mediator to disclose such information to the other Party. The exchange of information or making of communications in the mediation process shall not constitute a waiver of: (a) the attorney-client privilege, (b) attorney work-product privilege, (c) the status of information as confidential, and (d) the status of information as a trade secret. No information exchanged or communication made in the mediation process shall constitute an admission for purposes of any applicable rule of evidence. The confidentiality provision set forth in this paragraph will survive termination of the mediation, whether by breach, mutual agreement of the Parties, settlement or otherwise.

(ii) The Parties agree, on behalf of themselves and their attorneys, that none of them will call or subpoena the Mediator or the law firm in which he is a member in any legal, arbitral or administrative proceeding of any kind to produce any of his notes or documents relating to the mediation or to testify concerning any such notes or documents or his thoughts or impressions. If any Party attempts to compel such testimony or production, such Party shall indemnify and hold the Mediator and his law firm harmless from, and reimburse the Mediator and his law firm for, any reasonable losses, liabilities, costs and expenses, including attorneys' fees and lost professional time, which he may suffer or incur in lawfully resisting such compulsion.

(iii)     The Mediator and his agents will have the same immunity as judges and arbitrators under federal or common law from suits for damages or equitable relief based on or concerning any action, statement, communication or omission concerning the mediation.

5.      <u>The Role of the Mediator</u>.  The Parties understand and agree that:

(i)     The Mediator's task is to facilitate negotiations of the Parties, not to decide the matter for them.

(ii)    The Mediator may use evaluative as well as facilitative techniques in conducting the mediation.  Thus, in the confidential caucus sessions with a Party, the Mediator may play an activist role as the "agent of reality" and express opinions as to alternative outcomes if he believes that such Party is not being realistic in making an objective cost/benefit or risk/reward analysis between a particular settlement proposal and the costs and uncertainties of the litigation (or arbitration) alternative.

(iii)   There is no attorney-client relationship between the Mediator and any Party to this Agreement, and each Party acknowledges that it will seek and rely on legal advice solely from its own counsel and not on any opinions that may be expressed by the Mediator. Any settlement agreement that may be reached with the assistance of counsel should be reviewed by each Parties' independent counsel.

6.      <u>Pre-Mediation Session Submissions</u>. The Mediator will review any documents and materials that a Party regards as relevant. The Parties will provide the Mediator a pre-mediation session submission, which may include a case summary and statement of position, at least ten days before the scheduled mediation session. At their option, the Parties may agree to exchange their mediation statements. The Mediator encourages the Parties to include in their respective mediation statements the legal basis and business rationale supporting their positions and to exchange their mediation statements. A Party may also provide the Mediator with a confidential submission addressed only to the Mediator provided that it is clearly designated as such.

7.      <u>Participation of Parties</u>.  The mediation session(s) will be attended in person or virtually by a representative of each of the Parties having authority to negotiate and settle all disputed amounts and issues, it being understood that any settlement agreement signed by the Debtor will be subject to approval of the Bankruptcy Court.  The Parties are encouraged to consult with the Mediator in advance of the mediation session to identify the most appropriate persons to attend the mediation session. To avoid any miscommunication or inconvenience, each party will email the Mediator (prubin@rubinlawllc.com) at least 7 days before the mediation is scheduled to begin to advise the mediator as to the name, telephone number and e-mail address of each person who will appear at the mediation session on its behalf together with disclosure of the individual's titles or other connections to the party named in the action.

8.      <u>Fees and Expenses</u>.  The fee for the Mediator's services hereunder shall be computed at the rate of $550 per hour for the time spent in connection with the mediation, including, but not limited to, pre-hearing consultations and preparation, review of submitted materials and related research, joint mediation and caucus sessions, and all post-mediation caucuses and telephone and other mediation communications, including mediating any disputes

as to a definitive settlement agreement. Each of (i) the Debtor and (ii) the Secured Creditor will be responsible for paying one half (50%) of the fees and out-of-pocket expenses of the Mediator. The Mediator's expense for Westlaw use, if any, will be capped at $250. Within fifteen days after execution of this Agreement, Secured Creditor will advance or cause to be advanced the sum of $2,500 payable to Paul Rubin, (the "Advance Payment") toward compensation for the Mediator. Following conclusion of the mediation, the Mediator will send via email a detailed invoice showing his time charges and expenses incurred in connection with the mediation to counsel for the Parties, and payment of the Mediator's fees and expenses will be due within seven days of receipt, except the Mediator will seek compensation and reimbursement for the Debtor's share of the mediation fees and expenses upon application to the Court in accordance with 11 U.S.C. §§ 330 and 331, as required by this Court's Order entered on March 10, 2025 [ECF No. 38].

9. <u>Disposal of Documents from the Mediator</u>. At the conclusion of the mediation process, the Mediator may, in his discretion, destroy his notes and any materials submitted to him by either of the Parties.

10. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

11. <u>Authority to Execute</u>. Counsel for the Debtor will promptly seek approval of the Court of the terms of this Agreement and authorization for the Debtor to enter into this Agreement. The individual(s) signing below, by affixing his or her signature hereto, represents that he or she has authority to execute this agreement on behalf of the Party on behalf of whom he or she is signing this Agreement.

IN WITNESS WHEREOF, the undersigned acknowledge that they have read, understood and agree with all matters stated in this Stipulation and Mediation Order as of March 24, 2025.

WILLOUGHBY EQUITIES LLC:

By: /s/ Eric Snyder, Esq.
     Eric Snyder

TWIST REALTY LLC

By: /s/ Alex Tsionis, Esq.
     Alex Tsionis

Agreed:

    /s/ Paul Rubin, Esq.
     Mediator

Dated: April 10, 2025
     Brooklyn, New York



Jil Mazer-Marino
United States Bankruptcy Judge